JOSEPH A. SANDER *vs.* CITY OF SOMERVILLE.

Middlesex.   December 7, 8, 1921. — April 21, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CARROLL, & JENNEY, JJ.

*Firemen. Somerville. Words,* "Conflagration," "Liberty."

The word "*conflagration*" as used in St. 1919, c. 132, § 3, was assumed to relate to a fire extending to many objects or over a large space.

The "*liberty*" when off duty to which a permanent member of the uniformed fire fighting force of a city which has accepted the provisions of St. 1919, c. 132, was entitled under § 2 was not absolute: it necessarily was subject to such reasonable regulations as rendered practicable the provisions of § 3 for his presence in case of a conflagration, and was consistent with that obligation.

A regulation of a fire department of the city of Somerville, which had accepted the provisions of St. 1919, c. 132, read as follows: "Any fire that necessitates the sounding of a second or general alarm is for a conflagration in its incipiency, and the full fighting strength of the apparatus and men will be required to prevent it getting beyond control, therefore either such alarm shall summon to the fire, the members of the off duty platoon (excepting those on the twenty-four hours leave, and then only if they so elect) whose companies respond to the fire. No member shall so place himself that he cannot answer the summons, and any neglect to respond shall be reported to this office." *Held,* that the regulation provided in a practical way for compliance with the statute and was reasonable.

A member of the permanent uniformed fire fighting force of the city of Somerville violated the provisions of the regulation above described by not responding to a second alarm of a fire sounded while he was off duty, not on twenty-four hours leave but absent from the city so that he did not know of the alarm, and he was suspended for three days with loss of pay by the chief engineer of the department acting under an ordinance of the city providing, that "Any member who in any way shall neglect or refuse to perform his duty or to abide by the regulations of the chief engineer . . . may be punished by a forfeiture of pay for a period not exceeding four weeks, by the order of the mayor. The chief engineer shall have the right to suspend any member, with loss of pay, for a period not exceeding seven days." *Held,* that such member could not maintain an action for pay for the three days of his suspension, even though he presented himself for duty each day and his services were refused.

CONTRACT for "wages or salary" for the days of April 8, 9, 10, 1920, as a permanent member of the uniformed fire fighting force of the city of Somerville. Writ dated June 1, 1920.

In the Superior Court, the facts were agreed upon. Material facts are described in the opinion. The action was heard by *Irwin*, J., without a jury, who found the facts to be as stated in the agreed statement of facts and reserved and reported the case for determination by this court.

St. 1919, c. 132, §§ 1–3 (see now G. L. c. 48, § 59), were as follows:

"Section 1. The permanent members of the uniformed fire-fighting force in every city and town which accepts the provisions of this act shall be divided by the fire commissioner, board of fire commissioners, chief engineer, board of engineers, or other officer or officers having charge of the fire-fighting force into two bodies or platoons, which shall be designated as a day force and a night force, and the day force and night force shall alternate on tours of duty every third day.

"Section 2. The hours of duty of the day force shall be from eight o'clock ante meridian to six o'clock post meridian, and the hours of duty of the night force shall be from six o'clock post meridian to eight o'clock ante meridian; provided, that on every third day, for the purpose of alternating the day force with the night force and vice versa, the number of hours of duty herein stated may be exceeded, but one force shall be at liberty at all times except as is otherwise provided in section three of this act.

"Section 3. In case of a conflagration, the officer or board having charge of the fire-fighting force shall have full authority to summon and keep on duty any or all of the members of the fire-fighting force while the conflagration continues."

*T. J. Shea*, for the plaintiff.

*F. W. Kaan*, for the defendant.

JENNEY, J. The plaintiff is and for a considerable time has been a permanent member of the uniformed fire fighting force of the city of Somerville. St. 1919, c. 132 (see now G. L. c. 48, § 59), was duly accepted by that city in November, 1919. Thereafter there were two platoons, designated respectively as day and night forces, which alternated in hours of service every third day. The statute fixed the hours and provided that "one force shall be at

liberty at all times, except that in case of a conflagration the officer or board having charge . . . shall have full authority to summon and keep on duty all members of the fire fighting force while the conflagration continues."

The ordinances of Somerville authorized the chief engineer of the fire department to make regulations, subject to the mayor's approval, for the proper government of the department and for the extinguishment of fires. On February 2, 1920, certain regulations made by the chief of the fire department of Somerville became effective. They had been approved by the mayor, and it is not now contended that they required the approval of the aldermen. Among them was the following: "Any fire that necessitates the sounding of a second or general alarm is for a conflagration in its incipiency, and the full fighting strength of the apparatus. and men will be required to prevent it getting beyond control, therefore either such alarm shall summon to the fire, the members. of the off duty platoon (excepting those on the twenty-four hours leave, and then only if they so elect) whose companies respond to the fire. No member shall so place himself that he cannot answer the summons, and any neglect to respond shall be reported to this office."

On April 1, 1920, in the early afternoon, a second alarm was. sounded by order of the chief of the fire department for a fire in Union Square. The fire was confined to the two upper floors and roof of a four-story building with exterior walls of brick, whose roof was covered with slate, and whose interior construction was. of wood.

The fire department consisted of four engine companies, three ladder truck companies, and four combination hose and chemical companies; of these, three engine companies, two ladder truck companies, and three combination hose and chemical companies were called to the fire by said second alarm. The company of which the plaintiff was a member responded to said alarm and was dismissed at 4:38 P.M. The all-out signal was sounded at 6.22 P.M. On the day of the fire, the plaintiff's hours of duty ended at 8 A.M. and again commenced at 6 P.M.; he was not in Somerville when the second alarm sounded, and, as he did not hear or know of it, did not respond thereto.

Subsequently, the plaintiff was summoned before the chief

and later was suspended for three days with loss of pay, because of failure to comply with the regulation.

The ordinances of Somerville relating to its fire department provide that "Any member who in any way shall neglect or refuse to perform his duty or to abide by the regulations of the chief engineer . . . may be punished by a forfeiture of pay for a period not exceeding four weeks, by the order of the mayor. The chief engineer shall have the right to suspend any member, with loss of pay, for a period not exceeding seven days."

Notwithstanding his suspension, the plaintiff reported for duty on each of the days for which he had been suspended, but was not permitted to render service.

He now sues to recover compensation for the time he was suspended. The case by consent of parties has been reported for the determination of this court upon an agreed statement of facts, and without any decision thereon. G. L. c. 231, § 111.

By reason of the statutory provision that one force shall be at liberty at all times, except as limited by the authority to summon and keep on duty all members in case of a conflagration and while the conflagration continues, the plaintiff contends that the quoted regulation requiring him to be in readiness to respond to a second or general alarm is invalid, unless there was in fact a conflagration, because it unreasonably restricts the "liberty" secured to him by the statute. He urges that when off duty he could go where he pleased unless a conflagration in fact existed; and that there was no conflagration when he failed to respond to the alarm on April 1, 1920, because the fire was confined to one building.

It is assumed that the word "conflagration" as used in the statute relates to a fire extending to many objects or over a large space. The "liberty" to which the plaintiff was entitled was not absolute; it necessarily was subject to such reasonable regulation as rendered practicable the provision for his presence in case of a conflagration, and as was consistent with that obligation.

The regulation in question clearly is reasonable; it provides in a practical way for compliance with the statute. One subject to its terms may be anywhere within or without the city providing he does not place himself so that he cannot answer a second or general alarm; the further requirement that such alarms shall be answered also is valid because it provides in a reasonable way for

the presence and services of members of the department. Any other construction of the statute would largely render this right of the city of little or no practical value and would prevent the preparation necessary in order to control a conflagration. The regulation did not apply to those upon leave of absence for twenty-four hours.

As the regulation was valid and as the plaintiff failed to observe its provisions and neglected to respond to the second alarm, the chief of the fire department properly could suspend him with loss of pay for a period not exceeding seven days. No question is made as to the validity of the ordinance creating the power of suspension. It follows that this action cannot be maintained and in accordance with the terms of the report judgment is to be entered for the defendant, without costs.

*So ordered.*